Ralph W. Chandless v. Commissioner.
Chandless v. Commissioner
Docket No. 111352.
United States Tax Court
1943 Tax Ct. Memo LEXIS 238; 2 T.C.M. (CCH) 296; T.C.M. (RIA) 43295; June 22, 1943
*238 Ralph W. Chandless, Esq., 239 Walter Ave., Hasbrouck Heights, N. J., pro se. Paul P. Lipton, Esq., for the respondent. LEECH Memorandum Findings of Fact and Opinion LEECH, Judge: This proceeding involves a deficiency in income taxes for the calendar year 1938 in the sum of $883.95. The deficiency arises from (1) the disallowance of a deduction by petitioner of the sum of $2,487.50 as a loss on his stock in Bridge Development Bond and Mortgage Company, Ins., (hereinafter called "Bridge") and the sum of $750, on his stock in Fidelity Finance and Realty Company, (hereinafter called "Finance") both of which petitioner claimed became worthless in 1938; and (2) the disallowance of a deduction of $3,288.35 as a bad debt. The case was submitted on oral testimony and documentary proof. The petitioner's return for the year 1938 was filed with the collector of internal revenue for the Newark Division of the State of New Jersey. Findings of Fact In 1929, at the time of the organization of Bridge, the taxpayer purchased 4,925 shares of no par value stock at the price of $1 per share. [1] Petitioner became a director of the corporation and his law firm, Chandless, Weller & Kramer, acted *239 as its counsel. The corporation dealt only in second mortgages. It defaulted in the payment of its 1933 State Franchise tax to the State of New Jersey. Sometime prior to July 29, 1936, upon the application of the petitioner as one of the complainants, a receiver was appointed by the Chancery Court of New Jersey. On July 30, 1936 the receiver filed an inventory and account based on the appraisals made by three appraisers appointed by the court. This appraisal shows that on the basis of the valuation there placed upon the real estate, the parcels owned by the corporation had no value in excess of the total of the first mortgages thereon, and as to the parcels on which the corporation held second, third and fourth mortgages, the total of the outstanding first mortgages was in excess of the total value of the property. On December 27, 1938 an order was entered in the receivership proceeding approving the receiver's account. It shows receipts of $17,705.97 and disbursements of $11,443.47, leaving a balance of $6,262.50. The order provided that out of that balance, the sum of $3,250, together with taxed costs, be allowed the receiver; *240 the solicitor for the receiver; $2,500 with taxed costs and the solicitor for the complainants, $250 with taxed costs, the balance to be distributed to the creditors. Petitioner, on his 1937 income tax return, deducted $1,990, as 40 per cent of a loss of $4,975 as the alleged cost of the shares of capital stock of Bridge. In an amended return for the calendar year 1937, filed March 14, 1939, petitioner deducted no amount as a loss claimed on these shares. In the years 1929 and 1930, petitioner purchased 10 shares of the preferred and 40 [2] shares of the common capital stock of Finance, as a unit for the sum of $1,500. Finance was a holding company organized under the laws of the State of New Jersey. It owned 87 1/2 per cent of the stock of the Realty Title Insurance Company, a corporation organized under the insurance laws of the State of New Jersey, and authorized to insure mortgages. In 1936 the Commissioner of Banking and Insurance took over the Realty Title Insurance Company for conservation of its assets. In February 1938, the Commissioner of Banking and Insurance filed a petition with the Court of Chancery for the appointment of a trustee to wind up the affairs of the corporation. *241 In May 1938, a petition was filed with the Chancery Court of New Jersey by Agnes E. Gray alleging the insolvency of Finance and praying the appointment of a receiver. Thereupon the directors of Finance filed a voluntary petition alleging that it was hopelessly insolvent, and an order was entered May 13, 1938, appointing statutory receivers. An inventory and appraisal of the property of Finance was filed June 12, 1939, showing property valued at $2,201. The company had an outstanding bond issue of $25,000. The tax return for the calendar year 1935, filed by Finance, was filed by "Trustees in Dissolution appointed by the Chancellor of the State of New Jersey." The balance sheet attached to that return shows no equity in the shares of common stock as of December 31, 1935. At various times between April 28, 1930 and September 20, 1935, petitioner loaned to Walter J. Field sums totaling $3,518.33 without interest. Between June 20, 1934 and October 1935, the petitioner received from Field various sums totaling $229.98. Petitioner, on his 1938 income tax return, deducted the sum of $3,288.55 as a bad debt deduction. *242 At the time of the first loan petitioner received a second mortgage from a Mr. Curry on property at 234 Walter Avenue, Hasbrouck Heights, New Jersey, for the sum of $1,850. The North Jersey Title Insurance Company held an open first mortgage on this property for $3,500. Opinion The respondent contends that no basis to petitioner has been established with respect to his investments in either Bridge or Finance. Though there is some doubt on this point, particularly as to his basis for Finance stock, we need not decide that question since we agree with respondent that the petitioner has failed to establish that the losses on the investments in either Bridge or Finance were sustained in the year 1938, The burden is on the taxpayer, of course, to establish not only the fact of worthlessness [3] but he must show that it occurred here in the year claimed. ; ; . That burden remains constant with the taxpayer. Respondent is not required to show that the *243 loss occurred at some other date. Failure to sustain the burden justifies the disallowance of the deduction. . There can be no question of that the worthlessness of the capital stock of both Bridge and Finance was satisfactorily proven When did the stock become worthless? In order that a loss arising from investment of the capital stock of a corporation may be regarded as "sustained" within the meaning of the Revenue Act and the applicable regulations in any given year, where there has been no sale or exchange, there should be some identifiable event clearly evidencing the loss. Voluntary liquidation, bankruptcy or actual cessation of business destroying reasonable expectation of partial return is often such an event. . The petitioner offered in evidence no records of either of these corporations. His oral testimony and the exhibits offered in substantiation of his claim are so meager, disconnected and inadequate that we can only conjecture as to what the *244 facts were concerning these corporations. In the case of Bridge he points to the final liquidation taking place in December 1938, while as to Finance he singles out the appointment of a receiver as the identifiable events. Let us examine some of the testimony relied upon by the petitioner to show that the worthlessness occurred in 1938. As to Bridge, it was organized in the boom days of 1929. It dealt only in second mortgages. In 1933 it defaulted in the payment of its franchise taxes. It may have forfeited its charter. See N. J. St. Ann. 54:11-1 and 2. Petitioner was a director and his law firm its counsel, but petitioner supplied no evidences as to whether it continued to function as a going concern. In 1936, at the behest of petitioner as one of the complainants, a receiver was appointed by the Chancery Court of New Jersey. The basis for the appointment was not disclosed to this Court. Petitioner chose to rely on the final order of the Chancery Court showing that the receiver's receipts were $17,705.97 and his disbursements $11,443.37, leaving $6,262.50, which was ordered paid for administration expenses and costs. There was nothing for the creditors. In New Jersey a receiver is *245 required to file report and account every six months. N. J. St. Ann. 14:14-13. The record is devoid of evidence as to the financial status of the corporation between 1936 and December 1938. The petitioner relied upon an inventory and appraisal filed by the receiver in 1936 with the Chancery Court. It is voluminous and shows the appraisal of the real estate, the amounts of the first mortgages and the amounts of second mortgages held by Bridge. There is no statement by appraisers of assets and liabilities. The petitioner asserts the appraisal shows assets of $300,000 and liabilities of $1,126.04. An analysis thereof does not support his contention. Schedule A shows that of 28 parcels on which the corporation had second mortgages the total of the first mortgages exceeded the appraisal value. Accrued interest and unpaid taxes are not given. Schedule D shows judgments held in the sum of $19,318.91 with the comment that their collectibility is doubtful. Schedule E-1 shows notes receivable as $12,645.57 and Schedule E-1 shows rents due of $1,877, without comment as to collectibility. As shown by the final order of the Chancery Court filed in December 1938, nothing was available for creditors. *246 Petitioner in his original income tax return for the year 1937 deducted his entire investment in Bridge as worthless. This fact is not conclusive, yet it is not without significance as indicating his opinion as to the time. When considered with the other facts, i.e., that he was a director and had petitioned the court for the appointment of a receiver it becomes of greater import. As to the petitioner's investment in Bridge we therefore hold he has not sustained the burden of showing that it became worthless in the calendar year 1938. The facts with respect to the investment in Finance are somewhat different and require separate consideration. This was a holding company.it owned 87 1/2 per cent of the capital stock of Realty Title Insurance Company. The latter company was taken over by the Commissioner of Banks and Insurance of the State of New Jersey in 1936, presumably for conservation of its assets. In May 1938 the title company was turned over to the Chancery Court for liquidation, and was still in liquidation as late as July 1941. A balance sheet put in evidence by the petitioner indicates assets of $396,200 *247 and liabilities of $259,216.96 as of December 31, 1937. The evidence as to Finance discloses that its 1935 income tax return was filed by "Trustees in Dissolution appointed by the Chancellor of the State of New Jersey." The origin or nature of this proceeding appointing the trustees is not disclosed. These "trustees" in May 1938 filed a petition for appointment of a receiver, alleging insolvency. An inventory and appraisal was filed on June 12, 1939 showing assets of $2,201 but no liabilities are set forth. In such appraisal the value of the 87 1/2 per cent holding in the Realty Title Insurance Company was placed at "nil," the appraisers stating the claim was of "such contingent and uncertain character" they were unable to make any appraisal of the value. No corporate records or financial statements of Finance were offered in evidence. The only balance sheet to be found in the record is that attached to the 1935 income tax return. The assets as of December 31, 1935, are shown as $479,013.20; liabilities, exclusive of capital stock, as $312,585.24. The liability on the preferred stock is shown as $199,069; on the common as $9,992.24, indicating no book equity even then in the common *248 shares. We conclude that petitioner has failed to establish proof that his stock in Finance became worthless in 1938. On this issue we sustain the respondent. The petitioner deducted on his 1938 return the sum of $3,288.35 as a bad debt under section 23 (k) (1) of the Revenue Act of 1938. The respondent disallowed the amount claimed, but determined that the petitioner had realized a loss of $1,577.54 on the theory that the transfer of the property to the first mortgagee constituted a "sale" of the property. The testimony of the petitioner relative to this transaction is woefully incomplete. Petitioner testified that he loaned to one Field various sums aggregating $3,518.33 and that he was repaid the sum of $1,229.25, claiming a loss for the difference. Assuming that the amounts of the loans and repayments were sufficiently established by the evidence, the testimony as to what took place thereafter is so confused that the real facts are obscure. Petitioner testified that at the time of making the first loan of $1,850 on April 28, 1930, he received a second mortgage on a piece of property from a Mr. Curry, a cousin of the borrower, that on this property a first mortgage was held by *249 the North Jersey Title Insurance Company for $3,500; that to prevent a foreclosure of the property by first mortgagee, petitioner took title to the premises. No documentary proof was offered as to the mortgages or the deed, and no dates were supplied as to when the latter transaction took place. The testimony indicates the petitioner made an investigation of the "obligor on the bond" presumably referring to a "Mr. Curry" from whom he received the second mortgage; that he found the obligor was in Arizona suffering from tuberculosis and living on a veteran's pension and he states, "I wrote off the balance due me as bad debt." The record is devoid of any evidence as to the financial responsibility of the borrower, Walter Field. Petitioner, in his opening statement before the Court, made the statement that he had demanded payment by Field, but the debtor was "unable to do anything about it." Petitioner further claimed that he had "deeded" the property to the first mortgagee. We can not accept petitioner's opening statements in lieu of legal evidence. We hold that the petitioner has not overcome the presumption of the correctness of respondent's determination. We therefore affirm the respondent's *250 determination that the petitioner realized a loss of only $1,557.54 on this transaction. Decision will be entered for the respondent. Footnotes
1. The 1937 return shows the cost to be $4,975.↩
2. The 1937 tax return shows the number of common shares to be 60.↩
3. .↩